PRO YO STY, J.
This is a contest over the appointment of a tutor to five negro minor children, the contestants being the father and the maternal grandmother. The grandmother alleges that the father is excluded by reason of his having abandoned the children. The contest has arisen seven years after the death of the mother, and only because of a legacy of $300 having been left to one of the children, and of the necessity that some one should be qualified to receive this money. The children have not heretofore had any property, and now have none except that one of them has this $300.
Their parents were laborers; the father, a field hand, earning 80 cents a day on work days. The witnesses, including the father, are pretty well mixed on the names of these children, knowing only their nicknames; and the grandmother is unable to give their ages, and is even uncertain whether she succeeded *856 in getting them all down in her Bible at home, her daughter “was having them so fast.”
At the death of the mother of these children, the grandmother came and remained with them for some two weeks, and then took along to her home the youngest of them, a mere baby barely standing by holding to chairs, and the next youngest, a two year old tot. The father took care of the other three until two of them, and he himself, went down with smallpox. These three children were distributed among relatives and friends. The evidence is somewhat vague as to how this distribution came about. These relatives and friends do not seem to have ever objected to' having the charge and care of them, and do not seem ever to have called upon the father to contribute to their support, and he seems to have paid very little attention to them. He did, however, two or three times in seven years, send them things —some clothes and shoes. All of these children are now more of a help than a charge in the households where they are; and doubtless, whichever one of the applicants for the tutorship is chosen will not assume any greater or more direct charge of them than is had at present, except, perhaps, of Robert, the one made wealthy by the legacy of $300.
There has heretofore been no occasion for the appointment of a tutor to these children, and there is really no occasion now for it, and no one really desires it, except in the case of Robert. Therefore, in a sense, the contest narrows down to Robert, and to the conduct of his father towards him; and we can therefore confine ourselves to him, in our statement of the facts upon which the charge of abandonment is founded.
Robert was the little two year old taken charge of by the grandmother. A month or so after he was thus taken charge of by the grandmother, his uncle took him to the house of one Leah Hope, a friend of his, and left him in her charge. The father questioned the authority of his mother-in-law to give the child away in this manner; but, on Leah Hope’s assuring him that she would keep and care for the child, he consented to leave him with her. She since then has eared for the child; the father has visited him occasionally, and sent vegetables occasionally, and some small things.
The child has been well cared for; sent to school, etc. Leah Hope has now had him for nearly seven years, and is attached to him. The father, if given the tutorship, will leave him with her. He says that if he cannot have control of the child’s money, he prefers that Leah Hope should have it. The point is sought to be made against him that to give him the tutorship would be practically to give it to Leah Hope; in fact, that, in this contest, he is but a straw man for Leah Hope. But what harm is there in this, if this woman has become a second mother to the child. Next to her having borne him, what better assurance can the law have of her affection for him than having had charge and care of him from infancy to his present stage of approaching maturity.
We do not find that the conduct of this negro laborer, who, unable to take care in person of his children, has thus placed them in the care of persons who were able and willing to take his place in the performance of that office, constitutes abandonment, within the meaning of article 305, Civ. Code. By “abandonment” is meant the disregard of the paternal duty to see to it that the child is cared for; leaving the child to shift for itself. He has not done this, and does not seem to have lost his affection for the children, nor they for him.
For depriving a father of the tutorship of his children, a strong case should be made out. Ozanne v. Delile, 5 Mart. (N. S.) 21; Segura v. Prados, 2 La. Ann. 751.
The present case, however, would seem to *858 be one where the judge should be peculiarly careful in selecting an undertutor who will see to it that the tutor performs promptly his duty of investing the funds of the minor. The trial judge, we are told in the brief, was largely influenced in his judgment by the fact that the grandmother would have to give bond, whereas the father would not. This, doubtless, is a strong consideration; but it is one somewhat outside of the law, since the case must be decided strictly on the question of abandonment vel non.
It is ordered, adjudged, and decreed that the judgment appealed from be set aside, and that the application of Edith Alexander to be appointed tutrix to the minors, Edmond, Mahaley, Rebecca, Robert, and Cleveland Alexander, be rejected, and that Frederick Alexander be confirmed as natural tutor to said minors, and that letters of tutorship issue to him upon his complying with the requisites of the law; that the costs of these proceedings be paid out of the estate of the minors.